UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**WILLIAM M RUSSELL,**

Debtor.

Case No. **16-61174-7**

**MEMORANDUM OF DECISION**

At Butte in said District this 27th day of February, 2017.

In the above-captioned Chapter 7 bankruptcy case, after due notice a hearing was held at Missoula on February 16, 2017, on the Motion to Modify Stay (Document No. 24) ("Motion") filed by creditors KS Ventures, LLC ("KS Ventures") and Merry Moose Investment, LLC ("Merry Moose") (together "Movants"). Movants filed their Motion on January 12, 2017, just before the case was converted from Chapter 13. The Debtor William M. Russell ("Russell" or "Debtor") filed an objection, appeared, testified, and was represented by attorney Jon R. Binney of Missoula. Movants were represented by attorney Martin S. King of Missoula. Karen Smith ("Smith"), who owns membership interests in KS Ventures and Merry Moose, appeared and testified, represented by attorney James H. Cossitt of Kalispell.[1] The Chapter 7 Trustee Richard J. Samson ("Samson") appeared and testified and filed a consent to the Motion. Appraiser William R. Frazier testified. Exhibits ("Ex.") 1 through 40 were admitted into evidence by stipulation of counsel.

---

[1] Although Mr. Cossitt appeared on behalf of Ms. Smith, Mr. King conducted the hearing for the Movants.

1

At the conclusion of the parties' cases-in-chief the Court took the Motion under advisement. After review of the Motion, Debtor's objection, the record and applicable law, the Motion will be granted and the stay modified to authorize Movants to seek foreclosure and liquidation of the property identified in the Motion and described as follows:

> LOTS 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12,13,14,15, 16 ,17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38 AND 39 OF SWEETGRASS RANCH, ACCORDING TO THE MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CLERK AND RECORDER OF FLATHEAD COUNTY, MONTANA.
>
> AND
>
> ALL OPEN SPACES, COMMON AREA AND PRIVATE ROADWAYS OF SWEETGRASS RANCH, ALL LOCATED IN THE NE1/4 OF SECTION 33, TOWNSHIP 29 NORTH, RANGE 20 WEST, ACCORDING TO THE OFFICIAL MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CLERK AND RECORDER OF FLATHEAD COUNTY, MONTANA.

(the "Property").[2]

This Court has jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a). Movants' Motion to Modify Stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS

Russell has been engaged in several business ventures, including real estate development and the purchase and sale of machinery, equipment, and scrap. Russell and Smith were married until Smith initiated an action in Arizona state court to annul the marriage. Smith prevailed in the annulment action and the marriage was annulled. Before the marriage was annulled, Russell conducted business using Smith's bank account.

---

[2] Debtor owns additional property in Flathead County, but that property is not subject to the Motion to Modify Stay.

2

The Property is a residential subdivision located 6 miles east of Kalispell, Montana, consisting of 38 residential lots on approximately 120 acres, including 30 acres of common area, known as the "Sweetgrass Ranch[3]." Smith testified that during their marriage she spent one summer in a house on the Property with her horses.

Russell testified that he purchased the Property from Glacier Bank for $1.3 million six years ago. He testified that he bought the Property at the bottom of the market, after the original developers had invested $5 million into the project. He testified that he took out three loans from Glacier Bank to finance his purchase of the Property. Russell testified that he used his money which was in Smith's bank account for the purchase.

The Property is encumbered by liens arising from various instruments described as follows: (1) Deed of Trust dated December 21, 2011, to secure an original indebtedness of $336,727.00 owed to Glacier Bank as beneficiary, and recorded on December 23, 2011 as Document No. ending 26781 ("Deed of Trust 81"); Deed of Trust dated December 21, 2011, to secure an original indebtedness of $325,000.00 owed to Glacier Bank as beneficiary, and recorded on December 23, 2011 as Document No. ending 26782 ("Deed of Trust 82"); and, Deed of Trust dated December 21, 2011, to secure an original indebtedness of $325,000.00 owed to Glacier Bank as beneficiary, and recorded on December 23, 2011 as Document No. ending 26783 ("Deed of Trust 83") ("collectively, Deed of Trust 81, Deed of Trust 82, and Deed of Trust 83 are referred to as the "Merry Moose Liens").[4]

Smith testified that she formed Merry Moose for the purpose of acquiring the loans

---

[3] The property is described on the third page of Ex. 33 as: "Lots 1 through 39, excepting Lot 11, of the Final Subdivision Plat of Sweetgrass Ranch Subdivision located in NEl/4 of Section 33, Township 39N, Range 20W, Principle Meridian Montana, Flathead County."

[4] Beyond these 3 items, there are additional liens encumbering the Property, but those are discussed later in the Memorandum.

3

secured by the Merry Moose Liens. As a result of 3 separate Assignments of Deeds of Trust and Promissory Notes from Glacier Bank to Merry Moose, Merry Moose is the beneficiary under each of these instruments.[5]

Deed of Trust 81 specifically encumbers Lots 1, 2, 3, 6, 7, 8, 9, 10, 12, 13 and 14 of the Property, and as of the petition date Debtor owed a balance of $353,304.60. Deed of Trust 82 specifically encumbers Lots 4, 5, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 38 of the Property, and as of the petition date Debtor owed a balance of $350,170.80. Deed of Trust 83 specifically encumbers Lots 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 37 and 39 of the Property and as of the petition date, Debtor owed a balance of $362,308.00.

Each of the Merry Moose Promissory Notes that correspond to the Merry Moose Liens includes the following language, "a default on any one of these loans constitutes a default of all loans, and collateral for each of these loans serves as collateral for all loans." Under direct examination by Movants' counsel Debtor testified that he is in default under the notes held by Merry Moose, and that Merry Moose gave him notices of foreclosure sales of the Property. Ex. 10, 11, 12.

In addition to the Merry Moose Liens, the Property is subject to a lien in favor of KS Ventures as a result of a Deed of Trust dated June 14, 2013, to secure an original indebtedness of $5,000,000.00 owed to KS Ventures LLC, as beneficiary, and recorded on June 25, 2013 as Document No. ending 15492 ("KS Deed of Trust"). KS Ventures filed Proof of Claim 5 (the "KS Proof of Claim"). KS Ventures calculated the debt owed to it and secured by the Deed of Trust as of the petition date to be $1,258,126.00. Debtor filed objections to the KS Proof of

---

[5] *See* Merry Moose Proof of Claims Nos. 6, 7, and 8 in the Claims Register.

Claim at docket nos. 47 and 51.[6]

Finally, the Property is encumbered by a Federal Tax Lien recorded January 4, 2016, and is subject to unpaid real estate taxes. According to the IRS, its lien secures $613,791.45. Debtor testified that he disputed the amount of the lien, but he has not objected to the IRS Proof of Claim. Smith testified that she or entities she controlled have paid the real estate taxes owed on the Property since 2011. Her or her entities paid another $42,000 in real estate taxes owed on the Property in October 2016. Debtor admitted that he has not paid the real estate taxes. There may be additional judgment liens that have attached to the Property, subsequent to the issuance of Ex. 13, a Litigation Guarantee, issued on October 20, 2016. Along with unpaid taxes, Smith testified that Debtor never insured the Property, so she purchased forced place insurance for the Property. Debtor admits that Smith has paid the property taxes and insurance.

William Frazier ("Frazier") is a Montana-certified general appraiser. Frazier testified that he performs mostly complex commercial appraisals in Flathead County and surrounding counties. Merry Moose hired Frazier to perform an appraisal of the Property. Frazier testified that he arrived at a value for the Property in the amount of $1,180,000 in 2015. In Ex. 33, Frazier adjusted his opinion of the value of the Property to $1,350,000 as of November 9, 2016, if sold by bulk sale.

Although the Appraisal contains an appraised retail value finding of "the Aggregate Sum of Retail sales to $2,736,000," Frazier explained that the $2,736,000 retail figure was prior to costs and expenses of bringing the lots on line for sale.[7] Frazier characterized this as a real

---

[6] The proof of claim objections will be heard and resolved in a separate proceeding and nothing herein shall be construed as an adjudication of Debtor's objection as to the amount of the KS Proof of Claim.

[7] Frazier's testimony as to projected retail sales is of little use to the Court because this case has been converted to Chapter 7, and administration of the assets by the Trustee would require a bulk sale, not retail sale of the lots after costly improvements over 6 years.

concern. Frazier testified that he used a 6 year absorption rate which he believes would be required to sell all the lots at 5 lots per year. As for the real estate market around Kalispell, Frazier testified that the market operates at a 5 or 6 year cycle of price increases. Frazier does not expect the value of real estate to continue to rise, but instead sales and value will remain steady with the present value.

This case was filed on December 5, 2016, in order to prevent Merry Moose from conducting its non-judicial foreclosure pursuant to Montana's Small Tract Financing Act. Debtor filed his Schedules and Statement of Financial Affairs, Ex. 37, on December 23, 2016. Russell responded to lengthy questioning about innumerable inaccuracies in his schedules by acknowledging that he made "lots of mistakes" in his petition and Schedules because it was an emergency filing to stop the trustee's sale. Along with these acknowledgments, Debtor admitted that he failed to list other assets on his Schedules, including real property in Arizona and a right of redemption. He also failed to list several judgments that were entered against him in various lawsuits.

On January 12, 2017, the Chapter 13 Trustee filed a notice of Debtor's failure to appear at the 341 meeting of creditors and requested that the case be converted to Chapter 7. The Court converted the case to Chapter 7 on January 12, 2017. Chapter 7 Trustee Samson filed his consent to Movants' Motion on February 15, 2017. Samson testified that he investigated before filing his consent, and decided it was clear to him that there is no equity for the estate in the Property after consideration of the Movants' liens, the IRS lien and judgments.

## DISCUSSION

The Motion is based on §§ 362(d)(1) and (d)(2). Section 362(g) provides that a party seeking relief from the stay has the burden of proof on the issue of debtor's equity in property,

and the party opposing relief has the burden of proof on all other issues.

Cause exists under 11 U.S.C. § 362(d)(1) to grant stay relief. Section 362(d)(1) allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause". What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

Cause under § 362(d)(1) includes a lack of adequate protection. This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D. Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest*

7

> *Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy. D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "[2, 3] In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See* 2 COLLIER ON BANKRUPTCY ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I., Ltd.*, 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), aff'd, 738 F.2d 951 (8th Cir.1984)."

*In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984) addressed the issue on a basis of "equity cushion" as adequate protection in holding:

"While the term 'adequate protection' is not defined in the code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent. *In re Curtis*, 9 B.R. 110, 111-112 (B.Ct.E.D.Penn.1981).

An equity cushion is the classic form of protection for a secured debt, and its existence, standing

8

alone, can provide adequate protection under the code. *In re Interstate Distributing Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (citing *In re Mellor*, 734 F.2d 1400).

Movants have the burden of establishing there is no equity in the Property. 11 U.S.C. § 362(g)(1). The testimony of Frazier and his appraisal satisfy this burden. According to Frazier it was his opinion that the Property had a bulk sale value of $1,350,000.00. Although Frazier also opined that after improvements the Property could be sold for $2,736,000.00 in "Aggregate Sum of Retail Sales", this outcome would require capital investment.[8] And, in addition to the capital investment, the final outcome would not be realized for 5-6 years.[9]

Debtor's testimony regarding valuation was at odds with Frazier. For purposes of valuation, an owner is competent to give his or her opinion on the value of his or her property, most often simply by stating the conclusion without stating a reason. *See* Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL, 2016-2017 ed. § 701:2; *South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Tex.*, 614 F.2d 1056, 1061 (5th Cir. 1980). While a debtor's estimate of value may be acceptable in certain cases, the Court may give little weight to an opinion if not based upon sufficient facts. *In re Plummer*, 20 Mont. B.R. 468, 478 (Bankr. D. Mont. 2003); *In re Hungerford*, 19 Mont. B.R. 103, 118-19 (Bankr. D. Mont. 2001).

Debtor testified that he could sell every lot for $50,000, and that some lots are worth $100,000. He did not testify as to how many lots he could sell for $100,000. Without considering the costs of sale, which Frazier testified was a concern, if the Court were to accept Debtor's testimony that all 38 lots could be sold for $50,000, the gross proceeds would be

---

[8] According to Frazier, "the cost to bring lots on-line for sale is a real concern. . . . . In my final analysis, the risks to recover a $2.5 million [+/-] investment appear to be high." Appraisal at Dkt. 46-33 page 2 of 17.

[9] "Total sellout of lots is estimated at 6 years based on the available sales data." Appraisal at Dkt. 46-33 page 10 of 17.

$1,900,000. Here, the Court finds this testimony to be less than credible. Merry Moose's counsel questioned Debtor at length about the accuracy of his schedules, values included on those schedules, and a host of other omissions and inaccuracies. This questioning and Debtor's responses, combined with the lack of cogent detail offered by Debtor in support of his valuation testimony leave this Court with no alternative but to adopt Frazier's bulk sale opinion of value, $1,350,000.00, for purposes of determining whether there is equity in the Property.

As of the petition date, the Merry Moose liens secured approximately $1,065,783.00 owed to Merry Moose by Debtor. After deducting the Merry Moose debt from the value of the Property, there remains approximately, $284,217.00. However, as discussed earlier, KS Ventures and the IRS have junior liens against the Property. Setting aside the KS Ventures lien in light of the pending objection, the remaining $284,217.00 will be eliminated by the lien of the IRS, any other junior liens, or real estate taxes, and any costs of sale. Movants satisfied their burden of proof under § 362(g)(1) and§ 362(d)(1) to show that the Debtor does not have any equity in Movants' security.[10]

Debtor admits that he is in default in payments to Merry Moose, that he has neither paid property taxes, nor insurance premiums on the Property, and that he has not objected to Merry Moose's Proofs of Claim, or otherwise offered any evidence to support his Objection filed January 26, 2017, at docket no. 35, that he disputes the Merry Moose Liens or obligations they secure. The Court has already concluded Debtor does not have any equity in the Property. In addition, Debtor offers Movants no other form of adequate protection. Based upon the forging, and the Court's conclusion that there is no equity in the Property, the Court finds that Movants'

---

[10] The Court notes that the Chapter 7 Trustee also did his own analysis and reached the same conclusion as the Court, that after the Merry Moose liens are satisfied, any equity that might remain will be eliminated by the remaining liens.

have established cause for modification of the stay. Debtor's testimony fails to convince the Court that stay relief is not warranted. To the contrary, Debtor's own testimony established cause exists for modifying the stay under § 362(d)(1) as requested by Movants.

Stay relief is also appropriate under 11 U.S.C. § 362(d)(2). Section 362(d)(2) provides for the granting of relief from the stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." The Court has already concluded that Debtor has no equity in the Property and the issue of whether the Property is necessary to an effective reorganization is moot, because a reorganization is not contemplated in a Chapter 7 liquidation.

Having concluded that Movants satisfied their burden, this Court exercises its discretion to grant Movants' Motion to Modify Stay under §§ 362(d)(1) and (d)(2)(A). *Mataya v. Kissinger*, 72 F.3d at 108-109. Granting relief from the automatic stay returns the parties to the legal position which they enjoyed prior to the imposition of the stay. *In re Johnson*, 17 Mont. B.R. 318, 319 (Bankr. D. Mont. 1999); *Estate of B.J. McAdams v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D. Ga. 1993). Although, the Court has flexibility in determining whether to grant Movants' Motion, and has elected to exercise that discretion and grant the Motion, the Debtor retains whatever claims, defenses and remedies he may have against Movants' in this or a non-bankruptcy forum.[11]

## CONCLUSIONS OF LAW

1. This Court has original and exclusive jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a).

---

[11] If indeed the Debtor has a friend, creditor, or investor waiting in the wings, prepared to extend funds equal to or greater than the Merry Moose debt as Debtor testified in Court, nothing prevents Debtor and this third party from attending, participating or bidding as a prospective purchaser at any trustee's sale of the Property.

11

2. Movants' Motion to Modify Stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

3. Movants' satisfied their burden of proof under 11 U.S.C. § 362(d)(1), § 362(d)(2)(A) and § 362(g)(1) to show that cause exists to grant them relief from the stay and that the Debtor does not have an equity in the Property.

4. Debtor failed to satisfy his burden of proof to show that relief from the automatic stay should not be granted.

**IT IS ORDERED** a separate Order shall be entered in in conformity with the above, overruling Debtor's objection and granting Movants' Motion to Modify Stay.

_____
Honorable Benjamin P. Hursh
U.S. Bankruptcy Judge