UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**WILLIAM M RUSSELL**,

Debtor.

Case No. **16-61174-7**

**MEMORANDUM OF DECISION**

At Butte in said District this 28th day of February, 2017.

In the above-captioned Chapter 7 bankruptcy case, after due notice a hearing was held at Missoula on February 16, 2017, on the Motion to Dismiss Chapter 13 Petition (Document No. 9) ("Motion to Dismiss") filed by creditor Merry Moose Investment, LLC ("Merry Moose") on December 13, 2016, pursuant to 11 U.S.C. §§ 109(e), 1307 and 1325(a)(7), prior to conversion of the case from Chapter 13. The Debtor William M. Russell ("Russell" or "Debtor") filed an objection and appeared and testified, represented by attorney Jon R. Binney of Missoula. Merry Moose was represented by attorney Martin S. King of Missoula. Karen Smith ("Smith"), who owns Merry Moose, appeared and testified, represented by attorney James H. Cossitt of Kalispell. The Chapter 7 Trustee Richard J. Samson ("Samson") appeared and testified and filed a consent to the Motion to Dismiss. Appraiser William R. Frazier testified. Exhibits ("Ex.") 1 – through – 40 all were admitted into evidence by stipulation of counsel. At the conclusion of the parties' cases-in-chief the Court took Merry Moose's Motion to Dismiss under advisement. After review of the Motion to Dismiss, Debtor's objection, the record and applicable law, Merry

1

Moose's Motion to Dismiss will be denied in the exercise of this Court's discretion, since the case already has been converted to a case under Chapter 7 of Title 11, U.S.C.

This Court has jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a). Merry Moose's Motion to Dismiss is a core proceeding under 28 U.S.C. § 157(b)(2).

## FACTS

Russell has been engaged in several business ventures, including real estate development and the purchase and sale of machinery, equipment, and scrap. Russell and Smith were married until Smith initiated an action in Arizona state court to annul the marriage. Smith prevailed in the annulment action and the marriage was annulled. Before the marriage was annulled, Russell conducted business using Smith's bank account.

The Property is a residential subdivision located 6 miles east of Kalispell, Montana, consisting of 38 residential lots on approximately 120 acres, including 30 acres of common area, known as the "Sweetgrass Ranch[1]." Smith testified that during their marriage she spent one summer in a house on the Property with her horses.

Russell testified that he purchased the Property from Glacier Bank for $1.3 million six years ago. He testified that he bought the Property at the bottom of the market, after the original developers had invested $5 million into the project. He testified that he took out three loans from Glacier Bank to finance his purchase of the Property. Russell testified that he used his money which was in Smith's bank account for the purchase.

The Property is encumbered by liens arising from various instruments described as follows: (1) Deed of Trust dated December 21, 2011, to secure an original indebtedness of

---

[1] The property is described on the third page of Ex. 33 as: "Lots 1 through 39, excepting Lot 11, of the Final Subdivision Plat of Sweetgrass Ranch Subdivision located in NEl/4 of Section 33, Township 39N, Range 20W, Principle Meridian Montana, Flathead County."

2

$336,727.00 owed to Glacier Bank as beneficiary, and recorded on December 23, 2011 as Document No. ending 26781 ("Deed of Trust 81"); Deed of Trust dated December 21, 2011, to secure an original indebtedness of $325,000.00 owed to Glacier Bank as beneficiary, and recorded on December 23, 2011 as Document No. ending 26782 ("Deed of Trust 82"); and, Deed of Trust dated December 21, 2011, to secure an original indebtedness of $325,000.00 owed to Glacier Bank as beneficiary, and recorded on December 23, 2011 as Document No. ending 26783 ("Deed of Trust 83") ("collectively, Deed of Trust 81, Deed of Trust 82, and Deed of Trust 83 are referred to as the "Merry Moose Liens").[2]

Smith testified that she formed Merry Moose for the purpose of acquiring the loans secured by the Merry Moose Liens. As a result of 3 separate Assignments of Deeds of Trust and Promissory Notes from Glacier Bank to Merry Moose, Merry Moose is the beneficiary under each of these instruments.[3]

Deed of Trust 81 specifically encumbers Lots 1, 2, 3, 6, 7, 8, 9, 10, 12, 13 and 14 of the Property, and as of the petition date Debtor owed a balance of $353,304.60. Deed of Trust 82 specifically encumbers Lots 4, 5, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 38 of the Property, and as of the petition date Debtor owed a balance of $350,170.80. Deed of Trust 83 specifically encumbers Lots 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 37 and 39 of the Property and as of the petition date, Debtor owed a balance of $362,308.00.

Each of the Merry Moose Promissory Notes that correspond to the Merry Moose Liens includes the following language, "a default on any one of these loans constitutes a default of all loans, and collateral for each of these loans serves as collateral for all loans." Under direct

---

[2] Beyond these 3 items, there are additional liens encumbering the Property, but those are discussed later in the Memorandum.
[3] *See* Merry Moose Proof of Claims Nos. 6, 7, and 8 in the Claims Register.

3

examination by Movants' counsel Debtor testified that he is in default under the notes held by Merry Moose, and that Merry Moose gave him notices of foreclosure sales of the Property.  Ex. 10, 11, 12.

In addition to the Merry Moose Liens, the Property is subject to a lien in favor of KS Ventures as a result of a Deed of Trust dated June 14, 2013, to secure an original indebtedness of $5,000,000.00 owed to KS Ventures LLC, as beneficiary, and recorded on June 25, 2013 as Document No. ending 15492 ("KS Deed of Trust").  KS Ventures filed Proof of Claim 5 (the "KS Proof of Claim").  KS Ventures calculated the debt owed to it and secured by the Deed of Trust as of the petition date to be $1,258,126.00.  Debtor filed objections to the KS Proof of Claim at docket nos. 47 and 51.[4]

Finally, the Property is encumbered by a Federal Tax Lien recorded January 4, 2016, and is subject to unpaid real estate taxes.  According to the IRS, its lien secures $613,791.45.  Debtor testified that he disputed the amount of the lien, but he has not objected to the IRS Proof of Claim.  Smith testified that she or entities she controlled have paid the real estate taxes owed on the Property since 2011. Her or her entities paid another $42,000 in real estate taxes owed on the Property in October 2016.  Debtor admitted that he has not paid the real estate taxes.  There may be additional judgment liens that have attached to the Property, subsequent to the issuance of Ex. 13, a Litigation Guarantee, issued on October 20, 2016.  Along with unpaid taxes, Smith testified that Debtor never insured the Property, so she purchased forced place insurance for the Property.  Debtor admits that Smith has paid the property taxes and insurance.

William Frazier ("Frazier") is a Montana-certified general appraiser.  Frazier testified that he performs mostly complex commercial appraisals in Flathead County and surrounding

---

[4] The proof of claim objections will be heard and resolved in a separate proceeding and nothing herein shall be construed as an adjudication of Debtor's objection as to the amount of the KS Proof of Claim.

counties. Merry Moose hired Frazier to perform an appraisal of the Property. Frazier testified that he arrived at a value for the Property in the amount of $1,180,000 in 2015. In Ex. 33, Frazier adjusted his opinion of the value of the Property to $1,350,000 as of November 9, 2016, if sold by bulk sale.

Although the Appraisal contains an appraised retail value finding of "the Aggregate Sum of Retail sales to $2,736,000," Frazier explained that the $2,736,000 retail figure was prior to costs and expenses of bringing the lots on line for sale.[5] Frazier characterized this as a real concern. Frazier testified that he used a 6 year absorption rate which he believes would be required to sell all the lots at 5 lots per year. As for the real estate market around Kalispell, Frazier testified that the market operates at a 5 or 6 year cycle of price increases. Frazier does not expect the value of real estate to continue to rise, but instead sales and value will remain steady with the present value.

This case was filed on December 5, 2016, in order to prevent Merry Moose from conducting its non-judicial foreclosure pursuant to Montana's Small Tract Financing Act. Debtor filed his Schedules and Statement of Financial Affairs, Ex. 37, on December 23, 2016. Russell responded to lengthy questioning about innumerable inaccuracies in his schedules by acknowledging that he made "lots of mistakes" in his petition and Schedules because it was an emergency filing to stop the trustee's sale. Along with these acknowledgments, Debtor admitted that he failed to list other assets on his Schedules, including real property in Arizona and a right of redemption. He also failed to list several judgments that were entered against him in various lawsuits.

---

[5] Frazier's testimony as to projected retail sales is of little use to the Court because this case has been converted to Chapter 7, and administration of the assets by the Trustee would require a bulk sale, not retail sale of the lots after costly improvements over 6 years.

On January 12, 2017, the Chapter 13 Trustee filed a notice of Debtor's failure to appear at the 341 meeting of creditors and requested that the case be converted to Chapter 7. The Court converted the case to Chapter 7 on January 12, 2017. Chapter 7 Trustee Samson filed his consent to Movants' Motion on February 15, 2017. Samson testified that he investigated before filing his consent, and decided it was clear to him that there is no equity for the estate in the Property after consideration of the Movants' liens, the IRS lien and judgments. The Court entered a Memorandum of Decision and Order on February 27, 2017, granting Movants relief from the automatic stay.

## DISCUSSION

Merry Moose's Motion to Dismiss is based on § 109(e) for lack of eligibility for Chapter 13 relief because the amount of Debtor's secured debt and because he is not an individual with regular income; and under § 1325(a)(7) alleging the Debtor filed his petition in bad faith. Under § 1307(c), the court may dismiss a case or convert the case to a case under Chapter 7, whichever is in the best interests of creditors and the estate. *Rosson v. Fitzgerald (In re Rosson*, 545 F.3d 764, 771 (9th Cir. 2008). In a case construing whether a debtor filed a Chapter 13 petition or plan in bad faith under § 1307(c), this Court noted that it has the discretion to dismiss a case with prejudice for bad faith, or to convert the case to Chapter 7, which this Court already has done in the instant case. *In re Chabot*, 411 B.R. 685, 701 (Bankr. D. Mont. 2009); *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222-23 (9th Cir. 1999).

This Court already has converted the case to a case Chapter 7, by an Order which remains in effect. As a result, Merry Moose's arguments based on lack of eligibility for Chapter 13 relief and bad faith filing of a Chapter 13 petition are moot. Having reviewed Merry Moose's Motion to Dismiss and the record, the Court sees no reason to revisit its conversion of the case to

Chapter 7, when such an analysis could arrive at the same result.

Absent bad faith, a debtor has the right to dismiss a Chapter 13 case under § 1307(b). With the case having been converted to Chapter 7, however, dismissal now is governed by 11 U.S.C. § 707. Merry Moose's Motion to Dismiss was filed prior to conversion and does not address § 707, and therefore cause under that subsection has not been argued or established.

Russell filed his Chapter 13 petition to stop the foreclosure sale by Smith and Merry Moose. However, "[w]here the debtor is motivated by a legitimate reorganization purpose and not solely or predominantly by the desire to prevent foreclosure or hinder creditors, bad faith is not present." *In re Family Health Services, Inc.,* 104 B.R. 268, 278 (Bankr. C.D. Cal. 1989) quoting *In re Spenard Ventures, Inc.*, 18 B.R. 164, 167–68 (Bankr. D. Alaska 1982). Having converted the case to Chapter 7, the Court is not inclined to change its exercise of discretion and dismiss the case.

Pursuant to 11 U.S.C. § 105(a), "[t]he court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Chabot,* 411 B.R. at 704; *In re Reinertson*, 241 B.R. 451, 455, 18 Mont. B.R. 72, 77 (9th Cir. BAP 1999).

Debtor testified that, if the Court dismisses this case without a bar against refiling, he will file a petition for relief under Chapter 11 of the Code. The evidence in the record shows that the Debtor made several mistakes in his petition and Schedules. He testified that he has no intention of correcting his mistakes. That is unacceptable. This Court has a longstanding rule about a debtor's duty to prepare schedules completely and accurately, and to correct inaccuracies. *In re*

7

*Schwarz v. Liechti (In re Liechti)*, 543 B.R. 26, 45 (Bankr. D. Mont. 2015:

> "Numerous cases hold that the debtor has a duty to prepare schedules carefully, completely and accurately." *In re Mohring*, 142 B.R. 389, 394 (Bankr. E.D. Cal.1992), *aff'd mem.*, 153 B.R. 601 (9th Cir. BAP 1993), *aff'd mem.*, 24 F.3d 247 (9th Cir.1994). Moreover, a debtor must correct such documents filed with a court upon learning of their inaccuracy or incompleteness. *Id.* The debtor has "no discretion in this regard." *Smith*, 14 Mont. B.R. at 233. *In re Olympic Coast Inv. V. Wright (In re Wright)*, 364, B.R. 51, 72-73 (Bankr. D. Mont. 2007); *In re Wolcott* (*"Wolcott"*), 194 B.R. 477, 486 (Bankr. D. Mont. 1996).

The Debtor is obligated to correct his mistakes in his Schedules. *Id.*; *Mohring*, 142 B.R. at 394. Allowing the Debtor to dismiss the instant case without correcting his Schedules, and then refile for bankruptcy relief under the more complex requirements of Chapter 11 of the Code, would excuse the Debtor's failure to perform his duty. *Id.* This Court declines to dismiss the case and allow the Debtor to escape the performance of his duty.

The Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit in *Bartee v. Ainsworth (In re Bartee)*, 317 B.R. 352, 366 (9th Cir. 2004) quoted *In re Leach*, 130 B.R. 855, 857 (9th Cir. BAP 1991) stated: "The law in the Ninth Circuit is clear: a voluntary Chapter 7 debtor is entitled to dismissal of his case so long as such dismissal will cause no 'legal prejudice' to interested parties. *In re International Airport Inn Partnership*, 517 F.2d 510, 512 (9th Cir.1975) (*cited in* [*In re Hall*, 15 B.R. 913, 917 (9th Cir. BAP 1981)])." The Trustee concluded in his testimony that dismissal would not result in legal prejudice. However, given the number and magnitude of the Debtor's mistakes in his Schedules, which he has the duty to correct, the Court does not agree with the Trustee's conclusion. Furthermore, the Court is unwilling to allow the Debtor to dismiss the case, without correcting his Schedules, and follow it by filing a Chapter 11 petition which would cause the Court and the parties to revisit relief from stay issues which have been decided.

8

**IT IS ORDERED** a separate Order shall be entered in in conformity with the above, denying Merry Moose's Motion to Dismiss Chapter 13 Petition.

_____
Honorable Benjamin P. Hursh
U.S. Bankruptcy Judge